IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       -v-                              09-CR-6030CJS

JASON E. TUTTY,

              Defendant.

_____

## GOVERNMENT'S MEMORANDUM REGARDING RESTITUTION

On February 10, 2009, defendant Jason E. Tutty pled guilty to a one-count Information charging him with a violation of Title 18, United States Code, Section 2252A(a)(2)(A) (knowingly receiving child pornography). Sentencing is scheduled for June 17, 2009.

On or about May 6, 2009, the United States Attorney's Office for the Western District of New York (USAO-WDNY) received an unsolicited letter, dated May 6, 2009, from Mr. James Marsh, Esq. Such letter is requesting restitution for the minor victim depicted in the "Misty" series of child pornography which was found on the defendant's computer. On May 11, 2009, the government filed a motion for a protective order and motion to seal the restitution request made by the victim "Misty." The Court subsequently granted the government's motion by way of an Order, which was docketed on May 14, 2009.

The victim depicted in the "Misty" series, now an adult, states that she was eight and nine years old when subjected to

sexual abuse by a relative for the purpose of the production of child pornography as requested by a pedophile in another state. For the past decade, however, the victim states that images of the abuse she suffered have been received, possessed, and distributed by innumerable collectors of child pornography, to include defendant Tutty.  The victim now seeks compensation for the effects that this criminal behavior has had on her life in the form of restitution from defendant Tutty, pursuant to the Mandatory Restitution for Sex Crimes section of the Violence Against Women's Act of 1994.  See 18 U.S.C. §2259.

While the Government takes no position as to the restitution request, this memorandum is submitted for the purpose of providing a framework for evaluation of the victim's submission for mandatory restitution.

I.  **DISCUSSION**

This memorandum will first discuss the case law regarding mandatory restitution for offenses relating to material involving the sexual exploitation of children, taking the position that mandatory restitution applies to offenses relating to material involving the sexual exploitation of children and child pornography.  This memorandum will thereafter seek to explain how restitution should be calculated under the statute.

**A.   Restitution Is Mandatory for Offenses Relating to the Material Involving the Sexual Exploitation of Children**

Courts have repeatedly affirmed the mandatory character of restitution for crimes involving the sexual exploitation of children as outlined in offenses under Chapter 110 of the United States Code.  See United States v. Searle, 65 Fed. Appx. 343, 346 (2d Cir. 2003) ("18 U.S.C. § 2259 provides that a person convicted of sexual exploitation of a child must pay restitution."); United States v. Julian, 242 F.3d 1245 (10th Cir. 2001); United States v. Danser, 270 F.3d 451 (7th Cir. 2001); United States v. Laney, 189 F.3d 954 (9th Cir. 1999.  Courts have also awarded restitution for a variety of the costs enumerated in the statutory provision, including past and future counseling, vehicles to transport an adopted abused child, and house remodeling expenses. Laney, 189 F.3d at 954; Searle, 65 Fed. Appx. at 343.

However, it does not appear that any court has awarded restitution for offenses involving sexual exploitation of children or child pornography, when the defendant did not also participate in sexual exploitation of the child.  On the contrary, in every case in which a court awarded restitution, the defendant also participated in the sexual exploitation that produced the material or child pornography.  In Searle, for example, the defendant was convicted of three counts of receipt of child pornography and four counts of production of the same child pornography.  65 Fed. Appx.

3

at 344-45; <u>Danser</u>, 270 F.3d at 453 ($304,000 awarded against defendant convicted of creation of sexually explicit photographs, interstate travel with intent to engage in sexual act with minor, and possession of three or more items of child pornography).

Additionally, many cases in which restitution was awarded do not involve possession of material or child pornography at all, but rather sexual exploitation.   In <u>Julian</u>, for example, the court ordered restitution of $3,400 for counseling upon conviction for sexual abuse and exploitation.   242 F.3d at 1245.   The defendant was not convicted of possession of pornographic materials.   <u>See</u> <u>United States v. Estep</u>, 378 F. Supp.2d 763 (E.D. Ky. 2005) (imposing restitution upon defendant convicted of sexual abuse and exploitation of children).   The Ninth Circuit, in <u>Laney</u>, awarded restitution to a victim of child pornography from a defendant who pled guilty to distribution of material involving a different victim.   189 F.3d at 954.[1]  <u>Laney</u>, however, does not break new

---

[1] The Ninth Circuit also ordered Laney and five co-conspirators to jointly and severally pay the restitution award. The court did not specify as to whether this decision was based on the conspiratorial nature of the crime or the character of restitution generally.  On this point, it is important to note that the general restitution statute, 18 U.S.C. § 3664, provides the judge with discretion to impose joint and several liability for the full restitution amount, <u>id.</u> at § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution ..."), and the statutory provision here, 18 U.S.C. § 2259, provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664." <u>Id.</u> at § 2259(b).

ground because the defendant was also convicted of conspiracy to sexually exploit the victim to whom restitution was awarded.  Id. The case law, therefore, lacks examples of the imposition of mandatory restitution upon defendants found guilty of offenses relating to material involving sexual exploitation of children and child pornography.

### 1.   Chapter 110 Directs that Restitution is Mandatory for all Offenses of Sexual Exploitation of Children

It is clear, however, that the text of § 2259 clearly provides for mandatory restitution for all offenses of sexual exploitation and other abuse of children, including offenses relating to material involving sexual exploitation of children and child pornography.  The statute directs that "the court shall order restitution for any offense under this chapter."  18 U.S.C. § 2259(a).  The crimes in the relevant chapter, Chapter 110, entitled Sexual Exploitation and Other Abuse of Children, include sexual exploitation of children, id. at § 2251, selling or buying of children, id. at § 2251A, certain activities relating to material involving sexual exploitation of children, id. at § 2252, certain activities relating to child pornography, id. at § 2252A, various internet abuses of children, id. at § 2252B-2252C, and other acts. Damages under Chapter 110 are available for the "full amount of the victim's losses."  Id. at § 2259(b)(1).  The term victim "means the

individual harmed as a result of a commission of a crime under this chapter." Id. at § 2259(c). The statute defines losses to include any costs incurred by the victim for medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense. Id. at §2259(b)(3).

In sum, the statutory text is clear in that it provides for mandatory restitution for all offenses in the relevant chapter and offenses relating to material involving sexual exploitation of children and child pornography are contained in the relevant chapter.

## 2.   **Congress Intended a Broad Restitution Remedy**

In addition to the broad textual provisions, several other indications of Congressional intent support the view that restitution is widely available. First, Congress generously provided mandatory restitution for the "full amount of the victim's losses." Id. at § 2259(b)(1); see Laney, 189 F.3d at 966 ("Section 2259 is phrased in generous terms"). Additionally, Congress chose not to provide exceptions for impoverished defendants. Compare 18 U.S.C. § 3663 (allowing court to take into consideration status of

defendant) <u>and</u> 18 U.S.C. § 2259(b) (denying such discretion).
These choices indicate that Congress intended for restitution to be
broadly available.

    The legislative history of the most recent amendment to the
chapter regarding offenses of sexual exploitation and other abuse
of children evidences attention to the harm caused by possessors,
receivers and/or distributors of the child pornography on the child
victim.   The Senate Report specified two types of harm.   First,
Congress found that child victims are harmed by the continuous
circulation of their images:

> Because the child's actions are reduced to a recording,
> the pornography may haunt him in future years, long after
> the original misdeed took place. A child who has posed
> for a camera must go through life knowing that the
> recording is circulating within the mass distribution
> system for child pornography.  It is the fear of exposure
> and the tension of keeping the act secret that seems to
> have the most profound emotional repercussions.

S. Rep. 104-358, at 14 (1996) (quoting <u>New York v. Ferber</u>, 458 U.S.
747 (1982)).   Second, Congress found that because "[c]hild
pornography can also be used to blackmail victims of sexual abuse,"
the "existence of sexually explicit photographs or other materials
... can effectively silence a victim into not revealing the abuse
to parents or the authorities."   <u>Id.</u>   Both of these harms are
caused by the offenses of transportation, possession, receipt, and
distribution of images.   Congressional attention on these harms,
therefore, confirms that Congress intended what it stated in the

text: mandatory restitution applies to all the offenses in Chapter 110.

### 3.    The Existence of the Material Harms the Victims

The Supreme Court has consistently argued that the distribution and use of child pornography harms the child victims. In New York v. Ferber, the Court upheld a ban on the distribution and sale of child pornography because such activities were "intrinsically related" to sexual abuse.  The Court stated that in addition to the State having an interest in closing the economic network for these images, that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."  458 U.S. at 747. As the Court later noted in Ashcroft v. Free Speech Coalition, "each new publication of the speech would cause new injury to the child's reputation and emotional well-being." 535 U.S. 234 (2005). This rationale, that the very existence of child pornography harms the child victim, confirms that the end user of materials involving sexual exploitation of children or child pornography harms the victim even if he does not commit sexual exploitation in itself.

Lower courts have affirmed the existence of this harm caused by the end user in the sentencing context.  In United States v. Sherman, for example, the Seventh Circuit held that multiple counts of receiving, shipping, and possessing child pornography in

interstate or foreign commerce in violation of 18 U.S.C. 2252A, could not be aggregated for purposes of calculating the Guidelines sentence because they each harmed a different victim.  268 F.3d 539 (7th Cir. 2001).  The court reasoned that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters."  Other circuits have echoed this interpretation of the harms of child pornography.  United States v. Tillmon, 195 F.3d 640 (11th Cir.1999); United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998), cert. denied, 526 U.S. 1010(1999); United States v. Hibbler, 159 F.3d 233, 236-37 (6th Cir. 1998), cert. denied, 526 U.S. 1030(1999); United States v. Boos, 127 F.3d 1207 (9th Cir. 1997), cert. denied, 522 U.S. 1066 (1998); United States v. Ketcham, 80 F.3d 789 (3d Cir. 1996); United States v. Rugh, 968 F.2d 750 (8th Cir.1992).  But see United States v. Toler, 901 F.2d 399 (4th Cir. 1990).

> **4.   Constitutional Rationale and Sentencing Practices do not Support the Argument that Section 2259 Requires a Proximate Cause Requirement for Restitution**

Together, this constitutional rationale and sentencing practice undermine the argument that a proximate cause requirement exists in the statute and forecloses restitution against the possessors, receivers and/or distributors who are to be viewed as

the "end users" of child pornography.  Thus, to be consistent with
this rationale for constitutionality and sentencing practice the
statute must either not contain a proximate cause requirement or
end use must constitute proximate cause.

The strongest argument that Section 2259 does not impose
mandatory restitution against end users is based on interpreting
the section to require a causal connection between the loss of the
victim and the offense of the defendant that is strict enough to
foreclose restitution against an end user.  In <u>Laney</u>, for example,
the court held that "Section 2259, on the other hand [unlike a
sentencing guideline], incorporates a requirement of proximate
causation."  The court reasoned that the section "states that the
defendant shall pay 'restitution for any offense' to the 'victim'
of the offense" and "defines a 'victim' as 'the individual harmed
*as a result* of a commission of a crime under this chapter.'"  189
F.3d at 965 (<u>citing</u> 18 U.S.C. § 2259(c) (emphasis added)).  In
addition, the Ninth Circuit argued, the provision "states that
restitution shall compensate for 'the full amount of the victim's
losses,' which includes medical costs, lost income, and 'any other
losses suffered by the victim <u>as a proximate result</u> of the
offense."' <u>Id.</u> (<u>citing</u> 18 U.S.C. § 2259(b)(3)(F) (emphasis added).
The court concluded, consequently, that "Section 2259 therefore
requires a causal connection between the offense of conviction and
the victim's harm," <u>id.</u> at 966, although it found such a link, and

thus ordered restitution, because the defendant was involved in a conspiracy.

Numerous other courts have agreed with this interpretation of § 2259 to include a causal requirement.  See United States v. Crandon, 173 F.3d 122, 125-26 (3d Cir.) (considering whether defendant had engaged in "conduct [that] was the proximate cause of" the victim's injuries and therefore was liable to pay restitution under section 2259), cert. denied, 528 U.S. 855 (1999); Danser, 270 F.3d at 451; United States v. Doe, 488 F.3d 1154 (9th 2007); Julian, 242 F.3d at 1245.

This argument does not foreclose § 2259's applicability to offenses relating to material involving sexual exploitation of minors and child pornography for several reasons.  First of all, it is not clear that § 2259 incorporates a proximate cause standard. The provision does not use that term in its definition of victim. 18 U.S.C. § 2259(c).  This omission constitutes a striking contrast to the general restitution statute, which defines a victim as "a person directly and proximately harmed as a result of the commission of an offense."  18 U.S.C. 3663(a)(2).  And the Supreme Court has consistently emphasized the importance of meaningful variation among similar statutes.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) (giving weight to different phrases used by Congress).  Similarly, the inclusion of "proximate cause" in the

last of the enumerated types of losses may mean not only that such a requirement should be read in to all the other types of loss, but also that such a requirement does not accompany all the other types of loss.

More importantly, the argument that § 2259 incorporates a proximate cause standard that is not met by offenses relating to material involving sexual exploitation of children and child pornography is inconsistent with one of the Supreme Court's rationales for upholding such regulation of speech in the face of First Amendment challenges.  The Supreme Court has upheld such laws because they prevent harm to child victims.  <u>Ferber</u>, 458 U.S. at 760.  If a court finds that offenses relating to material involving sexual exploitation of minors and child pornography do not give rise to loss from a legal causation standpoint, then it is unclear how the same court could uphold such a law against a First Amendment challenge.  If the offense does not cause loss to the victim for restitution purposes, it is not clear how it could harm the victim for First Amendment purposes.  In other words, a constitutional child pornography law necessarily implies that defendants convicted under it have harmed, or caused loss to, the child victims.

**B.    The Calculation of Restitution**

Section 2259 provides for restitution for the "full amount of

the victim's losses," which "includes any costs incurred by the victim for (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense."   18 U.S.C. § 2259(b).   The case law evidences three trends: courts count future counseling expenses, express skepticism towards lost income, and allow miscellaneous costs.

First, numerous courts have upheld restitution based on the cost of future counseling.   In Laney, for example, the Ninth Circuit upheld restitution for future counseling because Congress "was aware that children victimized by sexual abuse often do not recover quickly" and would not have created an "unwieldy procedure" of requiring victims to continually petition the court for recurring, predictable counseling costs under 18 U.S.C. 3664.   189 F.3d at 966-67.   Other courts have agreed.   Danser, 270 F.3d at 455; Doe, 488 F.3d at 1154; Crandon, 173 F.3d at 122; Julian, 242 F.3d at 1245; Estep, 378 F.Supp. 2d at 763.

Second, at the same time, courts have expressed skepticism regarding the calculation of lost income.   In Laney, for example, the Ninth Circuit distinguished between future counseling and lost

13

income.   It   commented   that   "[i]n   many   cases,   an   order   of
restitution   for   future   losses   may   be   inappropriate   because   the
amount   of   loss   is   too   difficult   to   confirm   or   calculate"   and   cited
a   case   involving   future   wages   as   an   example.   189 F.3d at 967 n.14.
Other   courts   have   agreed.   See   Danser,   270   F.3d   at   455   n.5
("However,   the   type   of   restitution   that   section   2259   provides   is
not   similar   to   an   award   of   future   earnings.").   No   court   appears   to
have   awarded   lost   wages.

Third,   courts   have   accepted   miscellaneous   costs.   In   Searle,
for   example,   the   Second   Circuit   affirmed   restitution   for   the
purchase   of   a   new   car   to   transport   the   abused   children   and
remodeling   of   the   front   porch   to   accommodate   their   living   needs.
65 Fed. Appx. at 346.

### 1.   Expert Proof

In   these   cases,   the   courts   have   relied   on   experts.   The   Ninth
Circuit,   for   example,   relied   on   a   psychiatrist's   calculation   of
therapy   needs   in   Laney.   189 F.3d at 967.   In   Danser,   similarly,
the   government   relied   on   an   actuary   to   calculate   life   expectancy   as
it   related   to   actuary   needs.   270 F.3d at 453 n.1.   In   Crandon,   the
Third   Circuit   relied   on   both   a   social   worker   and   a   psychiatrist   to
counsel   therapy   and   hospitalization   needs.   173 F.3d at 122.   The
Tenth   Circuit,   in   Julian,   remanded   for   further   expert   determination
of   a   "specific"   dollar   amount   for   future   counseling.   242 F.3d at

1248.

### 2.   **Scale of Damages**

Courts have limited the restitution awarded to victims of sexual exploitation and other abuse. Generally, defendants are required to pay approximately $50,000 per victim that they exploited. <u>Searle</u>, 65 Fed. Appx. at 343 (imposing $17,582.85); <u>Laney</u>, 189 F.3d at 954 (imposing $60,000 on co-conspirators); <u>Crandon</u>, 173 F.3d at 122 (imposing $57,050.06); <u>Estep</u>, 378 F.Supp.2d at 763 (imposing $50,688 per victim plus miscellaneous expenses for three victims, for approximately $221,480 total).

Only one court has noted that this figure approximates the value that 18 U.S.C. § 2255 deems to be the damages for the victim of a Chapter 110 offense. <u>Estep</u>, 378 F. Supp.2d at 767 n.4. Since 18 U.S.C. § 2255 was amended from $50,000 to $150,000 in 2006, it is possible that courts may center restitution awards around this new value.

It should be noted that it is unclear whether courts will impose restitution joint and severally under § 2259. While 18 U.S.C. § 3664(h) includes such a provision, and § 2259(b)(2) incorporates that section, at least one court rejected restitution entirely when it could not decide which among a group of defendants

deserved to pay restitution.  <u>United States v. Raplinger</u>, 2007 WL
3285802 (N.D. Iowa Oct. 9, 2007).

<b><u>CONCLUSION</u></b>

For the above-stated reasons, it appears that mandatory
restitution applies to offenses relating to the "end users" of
material involving the sexual exploitation of children and child
pornography.  Calculation of the "full amount of the victim's
losses" under the statutory provision also remains, however, an
open question.

DATED:    Rochester, New York, May 22, 2009.

Respectfully submitted,

KATHLEEN M. MEHLTRETTER
Acting United States Attorney

By:  s/ CRAIG R. GESTRING
     Assistant United States Attorney
     United States Attorney's Office
     Western District of New York
     620 Federal Courthouse
     100 State Street
     Rochester, New York 14614
     (585) 263-6760, ext. 2279
     craig.gestring@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    v.                                09-CR-6030CJS

JASON E. TUTTY,

                    Defendant.
_____

### CERTIFICATE OF SERVICE

        I hereby certify that on May 22, 2009, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant(s) on this case:

        Robert G. Smith, Esq.


                                        s/ KIM M. PETTIT