**UNITED STATES DISTRICT COURT**
<u>**WESTERN DISTRICT OF NEW YORK**</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **09-CR-6030(CJS)** |
| **v.** | **STATEMENT REGARDING THE PSR AND REQUEST FOR A NON-GUIDELINE SENTENCE** |
| **JASON E. TUTTY,** | |
| **Defendant.** | |

ROBERT G. SMITH, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

1.     I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent the defendant, Jason E. Tutty.

2.     The factual representations made in this request are based on investigations by members of my office including a forensic computer expert, conversations with Jason Tutty and others and a review of the Presentence Investigation Report [hereinafter PSR], dated April 27, 2009 and the following exhibits:

Exhibit A:    Google Hello, how it works;

Exhibit B:    Tower Computer, detailed list of files downloaded 3/10/08;

Exhibit C:    Correspondence from Jason Tutty;

Exhibit D:    Letter of Acceptance written by Jason Tutty; and

Exhibit E:    Character Reference Letters written on behalf of Jason Tutty.

AO 72A
(Rev. 8/82)

**INTRODUCTION**

3.      Jason Tutty appeared before Your Honor on February 10, 2009.  He

pled guilty pursuant to a Plea Agreement to one count of Knowingly Receiving Child

Pornography in violation of Title 18, United States Code, Section 2252(a)(2)(A).

Pursuant to the Plea Agreement, the parties agree that Guideline § 2G2.2(a)(2)

applies and provides for a base offense level of 22.  The government and Mr. Tutty

agree that the following specific offense characteristics apply: (a) two level increase

because the material involved a minor under the age of 12 years; (b) the five level

increase because the case involved distribution for other than pecuniary gain; (c) a

two level increase for use of a computer; and (d) a three level increase for possession

of between 150 and 300 images.

4.      The government maintains that the four level increase because the

material portrayed sadistic or masochistic conduct or other depictions of violence

should also apply.  The defense reserved the right to argue that this increase does not

apply.

5.      Sentencing is currently scheduled for June 17, 2009.

2

## THE COURT SHOULD NOT SENTENCE MR. TUTTY FOR POSSESSION OF MATERIAL THAT INVOLVES SADISTIC OR MASOCHISTIC CONDUCT

6.      Jason Tutty reserved the right to argue that the four level increase, that the offense involves material that portrayed sadistic or masochistic conduct or other depictions of violence, should not apply.  Mr. Tutty's argument is that there was only a single image, of the 299 images, that qualified for the four level enhancement. Furthermore, that Mr. Tutty did not seek this image and was unaware that he had in fact downloaded this image.  Support for Mr. Tutty's argument, that he was unaware that this image was on his computer, is how the Google Hello program was used to download the image.  Google Hello is a program that lets computer users directly connect with other computer users to share digital pictures.  Google Hello employs a film strip that lets the user view the image(s) he intends to send or receive.  The film strip is displayed at the bottom of the computer screen and will display up to five images.  *See* Ex. A, explanation of Google Hello.

7.      In Mr. Tutty's case, the image in question was downloaded along with seven other images on March 10, 2008.  *See* Ex. B, printout of list of files downloaded by Google Hello.  Because the Google Hello film strip only displays five images and only in thumbnail form, Mr. Tutty may never have seen the image in question when it was downloaded to his computer.[1]

---

[1]The defense agrees that the image in question qualifies for the enhancement pursuant to § 2G2.2(b)(4).  The defense accepts the PSR.

3

8.      Unfortunately, Guideline § 2G2.2(b)(4) and Application Note 2 appear to require the Court to apply the four level upward adjustment "regardless of whether the defendant specifically intended to possess, receive, or distribute such materials." *See* § 2G2.2, Application Note 2.

9.      Accordingly, pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Court should apply the four level upward adjustment; however, the Court should not sentence Mr. Tutty within the guideline range advised by the four level increase because such a sentence would be "greater than necessary" for the purposes of sentencing.  *See United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007).

## GENERAL SENTENCING AUTHORITY

10.     The United States Supreme Court reaffirmed the importance of reserving sentencing discretion to federal district court judges, holding that:

> the federal sentencing statute . . . requires a
> sentencing court to consider Guidelines
> ranges...., but it permits the court to tailor the
> sentence in light of other statutory concerns
> as well.

*United States v. Booker*, 543 U.S. 220, 245-246 (2005).

11.     18 U.S.C. § 3553(a) directs the sentencing court to impose a sentence sufficient, but not greater than necessary to meet the purposes of sentencing.  This requires the Court to consider:

AO 72A
(Rev. 8/82)

(1)   The nature and circumstance of the offense and the history and characteristics of the defendant;

(2)   The need for the sentence imposed (including the opportunity to provide the defendant with...medical care...in the most effective manner);

(3)   The kinds of sentences available;

(4)   The kinds of sentences and the sentencing range established;

(5)   Any pertinent policy statement;

(6)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   The need to provide restitution to any victims of the offense.

12.     The "sufficient, but not greater than necessary" language is known as the parsimony clause of § 3553(a). *See Williams* at 476. The district court must impose sentence pursuant to § 3553(a), including the requirements of the parsimony clause. *Id.* The application of the parsimony clause requires the sentencing court to impose the lower of two sentences when the district court concludes either sentence would properly serve the statutory purposes of § 3553. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

13.     Furthermore, the Supreme Court has said that a sentencing court does not enjoy the benefit of a presumption that the Guidelines sentence should be imposed. *See Nelson v. United States*, __ U.S. __, 129 S.Ct. 890, 891 (2009).

**GROUNDS FOR IMPOSITION OF A NON GUIDELINE SENTENCE**

14.    Jason Tutty (hereinafter Jason) is a 37 year-old man who up until this incident had never been arrested.  Throughout his 37 years, Jason lived a fairly simple, uneventful life.  Jason grew up in Greece, New York.  Jason's father was a line worker at Eastman Kodak and Jason's mother was a homemaker.  Jason had one sibling, a brother who was two years older than him.

15.    Jason describes his high school years at Greece Olympia as "good."  But when asked for specifics,  Jason will tell you that he never had a best friend, the only reason a majority of the students at Olympia knew him was because he worked in the school book store, and he spent most of his time during his high school years with his head phones on, because, he says, "he liked music."

16.    When Jason graduated from high school, he went to Monroe Community College (MCC) for three semesters and then quit, choosing instead to go to work.  Eventually Jason returned to MCC and finished his last semester.  In 1996, Jason was accepted at University of Missouri to study journalism, but only lasted there one semester before coming back home.

17.    Over the last twelve years Jason has worked in a series of mostly chain restaurants as a cook - Olive Garden, Bahama Breeze, Bonefish Grill, Bellini's,

6

Bugaboo Creek, Jack Astor's, Tony Roma's, Papa John's and most recently Mario's Via Abruzzi in Pittsford, New York.

18.     When the Bahama Breeze restaurant that Jason was working at in Henrietta, New York closed, Jason was given the opportunity to move to Philadelphia, Pennsylvania to work at the Bahama Breeze there.  Jason accepted the opportunity and moved to Philadelphia in 2004.  But when his father died of cancer in 2006, to prevent his mother from having to be alone,  Jason moved back to Rochester.  When his mother became involved in a relationship  and no longer needed Jason's companionship, Jason rented his own apartment where he lived alone.

19.     The five short paragraphs above, for the most part, cover Jason's life. Pretty simple.  No violence, drugs or alcohol use to speak of.  No romantic relationships gone wrong, or for that matter, gone right.

20.     The Court must consider Jason Tutty as "an individual and a unique study in human failings that sometimes mitigate . . . the crime and punishment to ensue." *See Koon v. United States*, 518 U.S. 81, 113 (1996).  What is unique about Jason?  Unlike a majority of individuals his age, Jason has never been in a romantic relationship, nor has he ever had a best friend.  Since his arrest Jason has concluded that although he never acknowledged it, he has been lonely most of his life.  Jason masked these feelings by hiding behind the scenes, when in reality he wanted nothing more than a good friend.  On the outside, he shared his surface "all's right with the

7

world" attitude, never letting on just how lonely he was, or for that matter, his feelings on anything.

21.     For his crime Jason now faces an advisory guideline range of 168-210 months in prison.  The parsimony clause requires an analysis of the difference in the advisory guideline ranges resulting from the four level increase for an offense that involves material that portrays sadistic or masochistic conduct or other depictions of violence.  The guideline range with the four level enhancement is 168 to 210 months. The guideline range without the four level enhancement is 108 to 135 months. Comparing the two guideline ranges, there is a 60 month difference at the low end to a 75 month difference at the high end.  Accordingly, the Court should be mindful that the four level enhancement results in a significant increase in Mr. Tutty's sentencing guideline range.

22.     The Court should also be mindful that a correctly computed guideline range does not result in a presumptively reasonable sentence in district court.  *See Nelson* at 129 S.Ct. 891-892.

23.     Thus, there is no reason for Jason to receive a sentence for an offense involving sadistic or masochistic or other depiction of violence because there is only a single image depicting such conduct.  Plus, there is no evidence that Mr. Tutty sought this image or even was aware he possessed it.  Accordingly, to impose a sentence

8

within the advisory guideline range of 168 to 210 months of imprisonment would be to impose a sentence that is longer than necessary.

24.     Jason has no criminal record.  Jason has no history of touching children, of producing child pornography, or of marketing child pornography.  He is not sexually aroused when he is around children.  Jason's mother has babysat children in her home for years and Jason never harmed nor had thoughts of harming any of those children.

25.     Jason is not a dangerous man, and, a review of the federal investigation that led to Jason's arrest seems to indicate that the Department of Homeland Security did not think Jason was a dangerous man either.  As early as April, 2005, a child pornography investigation out of Seattle, Washington revealed that a Google Hello user "Jamokie" was trading child pornography images with other users, including someone using the screen name "Jetutty."  It was not until *three years* later on February 8, 2008 that agents went to the last known address for Jason Tutty, 1625 East Avenue, Rochester, New York.  Jason was not home.  The agents did not wait for Jason to come home that day, nor did they come back to his apartment on East Avenue the next day or even the next week.  Instead agents waited *seven months* before returning to Jason's apartment, which was still located at 1625 East Avenue. When the agents did encounter Jason, he was cooperative and remorseful, as he has

been ever since the day of his arrest with all members of the Federal Public

Defender's Office, the Government and the Court.

26.    The Court has the freedom to sentence Jason Tutty without the

restrictions of the Guidelines.  For example, in *United States v. Taylor*, 2008 WL

2332314 (S.D.N.Y. 2008), the defendant pled guilty to one count of receiving and

distributing child pornography.  With an advisory guideline range of 151 to 188

months, the court imposed a non-guideline sentence at the mandatory minimum of

60 months.  In providing an assessment of the necessary sentencing factors, the

district court stated, in part:

> [T]he Sentencing Commissions' setting of offense levels for
> sex offenses has been driven by "frequent mandatory
> minimum legislation and specific directives to the
> Commission." United States Sentencing Commission,
> Fifteen Years of Guidelines Sentencing at 72-73 (Nov.
> 2004) (cited in *United States v. Bennett*, No. 07 Cr. 235, slip
> op. At 7 (D.Neb. May 30, 2008) (Battalion, C.J.)  Thus,
> "the Guideline ranges of imprisonment for those crimes are
> a less reliable appraisal of a fair sentence," and therefore,
> "[i]n cases involving application of Guidelines that do not
> exemplify the Commissions's exercise of its characteristic
> institutional role . . . it is not an abuse of discretion for a
> district court to conclude when sentencing a particular
> defendant that application of a guideline will yield a
> sentence 'greater than necessary' to achieve the purposes
> set out in § 3553(a)." *Bennett*, slip op. at 7-8.

*Id.* at 8.  The court noted that it even felt that the mandatory minimum sentence of

five years was greater than necessary to comply with the necessary sentencing factors.

10

27.     Jason was visibly shaken when he read a victim impact statement related to this case.  Although Jason understands now that viewing child pornography is not a victimless crime, Jason truly did not comprehend that at the time he viewed the images on his computer.  Following Jason's reading of the victim's statement, he returned to his cell and cried.  In the days that followed, the devastation that he had caused the victim was all he could think of.  Jason took it upon himself to convey his thoughts in a letter which is attached hereto as Ex. C.

28.     The letter Jason wrote, along with his letter to the Court are heartfelt and sincere:

> ... the purpose of this letter is to apologize to you fir my actions.  I read your story, and it made me sad to take it all in and to see it from the perspective of the victim, especially one that was as traumatized as you .... I want you to know that I've done a lot of soul searching over the past 7 months, when I was first charged, and I have nothing but remorse, regret, and shame.

Ex. C, Letter from Jason Tutty.

> I have learned a few things since my arrest.  I learned that All crime, no matter how petty or severe it may be, has a victim.  In my case, many victims.  I also learned how my actions have affected other people.... I want to leave the system a changed & better person, and to take things one day at a tine.  I never, ever want to touch a computer again in my life.  I want you to know, Your Honor, that every time I go outside and see the barbed wire and every time that I go back to my bunk fir the night, I want to & will do whatever it takes to become a better human being.

Ex. D, Letter of Acceptance to the Court.

AO 72A
(Rev. 8/82)

29.     Several of Jason's family members have also written letters to the Court on Jason's behalf.  These letters include (1) letter from Diane Tutty, Jason's mother; (2) letter from Joseph and Susan Tutty, Jason's Uncle and Aunt; (3) letter from Christopher and Catherine Tutty, Jason's cousins; and (4) letter from Donald Schneider, friend of the Tutty family.  *See* Ex. E.

## CONCLUSION

30.     Based on the above, it is respectfully requested that Your Honor consider the § 3553(a) factors, specifically the nature and circumstances of the offense, the history and characteristics of Jason Tutty, the human failings that sometimes mitigate the crime and punishment, and sentence Jason Tutty to 60 months imprisonment.  Mr. Tutty has demonstrated extreme remorse and a strong desire to change.  Mr. Tutty did not venture out of his home to look for children, has not touched children and did not appreciate the impact his behavior had on the children involved, although he certainly does now.  Following a prison term, Mr. Tutty will have to register as a sex offender and will be supervised by the United States Probation Department.  He is also anxious to obtain counseling.  A sentence of five years would be sufficient, but not greater than necessary to achieve the purpose of sentencing.

AO 72A
(Rev. 8/82)

Date:   June 2, 2009
        Rochester, New York


                                              /s/Robert G. Smith
                                          Robert G. Smith
                                          Assistant Federal Public Defender
                                          28 E. Main Street, Suite 400
                                          Rochester, New York 14614
                                          (585)263-6201
                                          Robert_Smith@fd.org
                                          Attorney for Jason Tutty


To:     Craig R. Gestring, AUSA
        David B. Spogen, USPO

13

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA**

              **v.**                                **09-CR-6030(CJS)**

**JASON E. TUTTY,**

             **Defendant.**

_____

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2009, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

    1.     Craig R. Gestring, AUSA – craig.gestring@usdoj.gov

And, I hereby certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participant(s).

    1.     David B. Spogen, USPO – 1110 Federal Bldg., Rochester, NY 14614

                                     ___/s/Robert G. Smith_____
                                     Federal Public Defender's Office
                                     28 E. Main Street, Suite 400
                                     Rochester, New York 14614
                                     585-263-6201

AO 72A
(Rev. 8/82)